Nos. 23-1590, 23-1591 & 23-3045

# In The United States Court Of Appeals For The Third Circuit

AL SCHMIDT, in his official capacity as SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, and JONATHAN M. MARKS, in his official capacity as DEPUTY SECRETARY FOR ELECTIONS AND COMMISSIONS,

*Defendants-Appellants/Cross-Appellees,*

v.

THE PUBLIC INTEREST LEGAL FOUNDATION,

*Plaintiff-Appellee/Cross-Appellant.*

Appeal from the U.S. District Court for the Middle District of Pennsylvania
Case No. 1:19-CV-622 (Hon. Jennifer P. Wilson)

**BRIEF OF RESTORATION NEWS AS AMICUS CURIAE IN SUPPORT OF APPELLEE/CROSS-APPELLANT'S PETITION FOR REHEARING EN BANC**

Edward D. Greim*
Matthew R. Mueller*
**Admitted to Third Circuit Bar*
Graves Garrett Greim LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
T. 816.256.3181
F. 816.256.5958
*Counsel for Amicus Restoration News*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1, amicus Restoration News makes the following disclosures:

1) For nongovernmental corporate parties, please list all parent corporations:

*Restoration News is a program of Restoration of America, Inc., an Ohio 501(c)(4) nonprofit corporation.*

2) For nongovernmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock:

*None.*

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

*None.*

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: (1) the debtor, if not identified in the case caption; (2) the members of the creditors' committee or the top 20 unsecured creditors; and, (3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

*Not applicable.*

Dated: June 6, 2025　　　　　　　　　　　　　*/s/Edward D. Greim*
　　　　　　　　　　　　　　　　　　　　　　Edward D. Greim

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Amicus Restoration News*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................. i

TABLE OF AUTHORITIES ......................................................................... iii

IDENTITY & INTEREST OF AMICUS ..................................................... 1

REASONS FOR REHEARING EN BANC ................................................. 2

ARGUMENT ................................................................................................... 2

    I.    The panel decision conflicts with the Supreme Court's precedent in *Akins* and *Public Citizen*, which recognize standing to sue under public records statutes even when public disclosure is only part of the statute's "overall scheme." ........ 2

    II.   The nexus test endangers newsgathering and First Amendment speech by sanctioning judicial inquiry into the reasons for a journalist's investigation. ........ 6

        a.   The nexus test is unworkable and will lead to absurd results, particularly for press requesters who rarely have an interest in the records they seek beyond transparency itself. ........ 8

        b.   Judicial inquiry into a journalist's intent and viewpoint offends the freedom of the press. ........ 11

CONCLUSION ............................................................................................... 12

CERTIFICATE OF BAR MEMBERSHIP ................................................. 13

CERTIFICATE OF COMPLIANCE AND
VIRUS SCAN CERTIFICATION ............................................................... 13

CERTIFICATE OF SERVICE ...................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**                                                          **Page(s)**

*Bellitto v. Snipes*,
   935 F.3d 1192 (11th Cir. 2019) ............................................................. 7, 10

*City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*,
   596 U.S. 61 (2022) ....................................................................................... 11

*Fed. Election Comm'n v. Akins*,
   524 U.S. 11 (1998) ........................................................................ 2, 4, 5, 6, 10

*Greater Birmingham Ministries v. Sec'y of State for Alabama*,
   105 F.4th 1324 (11th Cir. 2024) .................................................................. 6, 7

*Pub. Citizen v. Dept. of Justice*,
   491 U.S. 440 (1989) ........................................................................ 2, 3, 4, 5, 8

*Pub. Int. Legal Found., Inc. v. Bellows*,
   92 F.4th 36 (1st Cir. 2024) ............................................................................ 7

*Pub. Int. Legal Found. v. Sec'y Commonwealth of Pennsylvania*,
   136 F.4th 456 (3d Cir. 2025) .......................................................... 3, 6, 7, 9, 10

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015) ...................................................................................... 11

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ....................................................................................... 3

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................... 2, 5, 8

*U.S. Dep't of Just. v. Tax Analysts*,
   492 U.S. 136 (1989) ....................................................................................... 6

**Statutes** **Page(s)**

15 U.S.C. § 1681n ................................................................................................. 5

15 U.S.C. § 1681o ................................................................................................. 5

26 U.S.C. § 6104 ................................................................................................... 1

52 U.S.C. § 20501 ................................................................................................. 6

52 U.S.C. § 20507 ................................................................................................. 6

52 U.S.C. § 20510 ................................................................................................. 5

## **IDENTITY & INTEREST OF AMICUS CURIAE**

Restoration News is a program of Restoration of America, an Ohio nonprofit religious organization. The mission of Restoration News is to provide comprehensive, accurate, and insightful coverage of news, politics, and current events from a Christian, conservative, and American perspective. As part of its newsgathering efforts, Restoration News relies upon federal public records statutes, including the Freedom of Information Act, the National Voter Registration Act, 26 U.S.C. § 6104 (requiring non-profits to make returns publicly available), and campaign finance disclosures. These statutes permit it to report on core government functions like election integrity, immigration, and the influence of money in politics.

Restoration News' efforts will be substantially hampered if the panel decision stands, rendering toothless the transparency statutes on which it relies. Restoration News generally requests records solely to provide transparency by disseminating information about the records to the public. The panel's nexus test would eliminate its standing to enforce its access rights. The result is the antithesis of Congress's intent: government actors will feel emboldened to deny lawful requests, particularly for the records most damning to them and therefore of greatest public interest.

No party's counsel authored this brief in whole or in part. No party, party's counsel, or person other than Restoration of America d/b/a Restoration News, or its counsel provided money for preparing or submitting this brief.

## REASONS FOR REHEARING EN BANC

Rehearing en banc is necessary because (1) the panel decision conflicts with *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998) and *Pub. Citizen v. Dept. of Justice,* 491 U.S. 440 (1989); and (2) the appeal involves a question of exceptional importance: whether litigants, specifically press-plaintiffs, must satisfy a purpose-based test as a prerequisite to vindicating rights created by Congress under federal open records statutes?

## ARGUMENT

I. **The panel decision conflicts with the Supreme Court's precedent in *Akins* and *Public Citizen*, which recognize standing to sue under public records statutes even when public disclosure is only part of the statute's "overall scheme."**

In *TransUnion*, the Supreme Court expressly carved out public records cases from its new informational injury standing requirements:

> The plaintiffs did not allege that they failed to receive any required information. They argued only that they received it *in the wrong format*. Therefore, *Akins* and *Public Citizen* do not control here. In addition, those cases involved denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information. This case does not involve such a public-disclosure law.

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021) (emphasis original). *TransUnion* affirmed the validity of *Public Citizen* and *Akins* in "public-disclosure or sunshine" cases. They have not been overruled or even called into doubt. This comes as no surprise. Just a few years earlier, the Court identified *Public Citizen* and

2

*Akins* as exemplars of when "the violation of a procedural right granted by statute can be sufficient ... to constitute injury in fact" so the plaintiff "need not allege any *additional* harm …" *Spokeo, Inc. v. Robins,* 578 U.S. 330, 342 (2016).

The panel decision narrows the Supreme Court's express carveout only to cases where "disclosure of information is the essence of [the] statute," *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pennsylvania*, 136 F.4th 456, 464 (3d Cir. 2025), thereby excluding standing where public disclosure is only part of Congress's "overall scheme". *Id.* at 465. The NVRA, it opines, is *solely* focused on increasing participation in federal elections, *id.* at 466-67; its Public Disclosure Provision is subordinate. The panel distinguished the NVRA from "'sunshine laws'…aimed solely at disclosure of information," where plaintiffs need only be denied information, nothing more. *Id.* at 465, n. 4.

Not only does this contravene the Supreme Court's carveout, the attempted distinction contradicts settled case law refusing to distinguish statutes aimed "solely" at public disclosure from statutes whose primary purpose was something other than disclosure, but where Congress included a public disclosure provision to advance that "primary" purpose.

*Public Citizen* involved the Federal Advisory Committee Act. 491 U.S. at 445-46. FACA "was born of a desire to assess the need for the 'numerous committees, boards, commissions, councils, and similar groups which have been established to

3

advise officers and agencies in the executive branch of the Federal Government.'" *Id.* Its purpose was to regulate the number of advisory committees and their functions, and to ensure they were "exclusively advisory in nature." *Id.* at 446. FACA contains a public disclosure provision, requiring open meetings and that "minutes, records, and reports be made available to the public." *Id.* at 446-47. Though FACA's "overall scheme" was regulating advisory committees, the predominance of that purpose was of no constitutional import to the Supreme Court's standing analysis when a plaintiff was denied access to records it claimed must be made available.

*Akins* agrees. 524 U.S. at 21. *Akins* involved disclosure obligations under the Federal Election Campaign Act of 1971. *Id.* at 14-15. *Akins* acknowledged that FECA's disclosures exist "beyond the[] better-known contribution and expenditure limitations." *Id.* at 14. Like the public disclosure provisions in the NVRA and *Public Citizen*, the disclosures in *Akins* were part of an *overall statutory scheme* that Congress determined would aid in advancing FECA's overall purpose: to remedy actual or perceived corruption of the political process. *Id.* Despite this, the Supreme Court held the plaintiffs had standing because their "'injury in fact'…consists of their inability to obtain information…that…the statute requires [be made] public." *Id.* at 21. The "secondary" role of the public disclosure provision was immaterial to the Court's analysis.

4

The Supreme Court's informational injury jurisprudence recognizes only one dichotomy: whether a statute (i) requires the government to make records publicly available; or (ii) merely requires a non-governmental actor (*i.e.,* a credit reporting agency) to make limited information available to a specific requester (*i.e.,* the subject of a credit report). *TransUnion*, 594 U.S. at 441-442.

This makes sense. When Congress authorizes private suits for money damages against private actors—like the Fair Credit Reporting Act, 15 U.S.C. § 1681n, 1681o—courts should necessarily be more skeptical of allowing plaintiffs to collect damages (particularly statutory damages, *id.* § 1681o(a)(1)(A)) without showing a tangible harm contemplated by Congress beyond a purely technical violation. But when Congress authorizes declaratory and injunctive relief to force a government actor to make records available (*see, e.g.*, 52 U.S.C. § 20510(b)), access to those records is clearly the interest Congress seeks to protect. Full stop. The interest and injury overlap entirely.

The only appropriate reading of *TransUnion* limits its application to informational injuries akin to the credit reporting context, while the *Public Citizen*-*Akins* "denial confers standing" rule still controls when plaintiffs enforce public rights of access conferred by Congress. *See Pub. Citizen,* 491 U.S. 440, 449; *Akins*, 524 U.S. 11, 21. The panel's reading conflicts with Supreme Court precedent and must be rejected.

5

## II. The nexus test endangers newsgathering and First Amendment speech by sanctioning judicial inquiry into the reasons for a journalist's investigation.

The panel decision requires spurned requesters to prove that their use of public records has "a nexus to the interest Congress sought to protect." *PILF*, 136 F.4th at 464, 469. But in the public records context, this snake eats its tail: the very interest Congress seeks to protect with public disclosure provisions is disclosure itself. *See, e.g., U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989) (FOIA passed "to open agency action to the light of scrutiny) (citation omitted); *Greater Birmingham Ministries v. Sec'y of State for Alabama*, 105 F.4th 1324, 1326 (11th Cir. 2024) (NVRA's disclosure provision "serves both goals" of increasing voter participation and election integrity "by granting voters transparency into a state's voter registration practices…"); *Akins*, 524 US. at 20 ("The injury of which respondents complain—their failure to obtain relevant information—is injury of a kind that FECA seeks to address."). Where Congress provides an unconditional, public right of access—as in the NVRA, 52 U.S.C. § 20507(i)—and allows private enforcement, suits to gain that Congressionally-mandated access necessarily have a direct "nexus to the interest Congress sought to protect."

Additionally, despite Congress identifying the NVRA's four explicit purposes, including election integrity, 52 U.S.C. § 20501(b)(3), and list accuracy, *id.* at (b)(4), the panel narrowed the law's purposes to only one: "increasing citizen participation

6

in federal elections…" *PILF*, 136 F.4th at 467. The holding limits the cognizable harms under the NVRA to only those with "a nexus to…the expansion of voter participation in federal elections." *Id.* at 469.

But what about efforts focused on Congress's other explicitly identified purposes: election integrity and list accuracy? Courts recognize that the NVRA's Public Disclosure Provision advances *all four* Congressional purposes, even though they could sometimes appear in tension. *See Greater Birmingham*, 105 F.4th at 1326 ("More than thirty years ago, the [NVRA] required states to adopt a wide variety of policies designed to increase both voter participation and election integrity. The disclosure provision of that Act serves both goals by granting voters transparency into a state's voter registration practices."); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 52 (1st Cir. 2024) ("To further these purposes, Congress created Section 8(i)(1) along with a private right of action for members of the public to enforce the provision's disclosure mandate."). *See also Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019) ("[B]ecause Congress also recognized that easing registration barriers could threaten the integrity of our elections, the legislation set forth another set of goals: 'to protect the integrity of the electoral process' and 'to ensure that accurate and current voter registration rolls are maintained.'"). By eliminating two of the four interests Congress identified, the panel decision compounds its error by

artificially restricting the class of injuries sufficient to confer standing under its already-narrowed "nexus" test.

Equally as troubling, it invites judicial scrutiny into *why* a journalist needs particular records, which necessarily calls for an inquiry into the content and viewpoint of the proposed publication, an inquiry the First Amendment does not tolerate.

> **a. The nexus test is unworkable and will lead to absurd results, particularly for press requesters who rarely have an interest in the records they seek beyond transparency itself.**

Restoration News is an investigative press outlet that seeks records to publish articles about the information contained in them. It does not seek to influence voter participation (though its stories may certainly have indirect or incidental impacts), or to generally align itself with the wishes of Congress. Until the panel decision, *how* a requester intends to use records has never mattered for standing. *See Pub. Citizen*, 491 U.S at 449 ("Our decisions interpreting [FOIA] have never suggested that those requesting information [] need show more than that they sought and were denied specific agency records."). *TransUnion* did not change that, and for good reason: it creates an unworkable standard at both the pleading and merits stages, calling for courts to make subjective determinations about what a press-requester intends to do with the records it seeks, and whether those plans will advance a Congressional purpose that is simultaneously divined by the same courts.

8

The nexus test is utterly unworkable in the public records context, particularly for press-plaintiffs. It invites judicial scrutiny into *why* a journalist wants records, factoring the journalist's intended reporting into standing analysis. Only press requesters intending to use requested records for a purpose supposedly aligned with Congress would ultimately have standing to sue. Congress undoubtedly intended the press to be among those requesters most aided by, and with the most to offer from, the public disclosure of government records. But journalists' right to public records has never been tied to whether they will use those records to advance Congressional policy. Until now, no one would have questioned a journalist's standing to sue if his NVRA request for records was denied, even though newsgathering is generally not tied to increasing voter participation. The panel decision said as much: "the production and dissemination of 'educational materials'…" is not "essential to a concrete interest protected by the" NVRA. *PILF*, 136 F.4th at 467; *see also id.* at 468 (same).

But as the panel decision demonstrates, judicial divination of Congress's intent is no easy task, even when Congress *explicitly identifies* its intent. Take the NVRA's potentially competing purposes of increasing voter activity while maintaining election integrity:

> [T]he NVRA is particularly ill-suited to focus on purpose rather than text because the statute's purposes are multiple and in some tension with each other: Congress sought to increase voter registration and to limit purging efforts that could impede the exercise of the franchise, while at

9

> the same time ensuring that voter rolls remain accurate and current. The NVRA, with its carefully balanced objectives, is paradigmatic of legislation aimed at maximizing competing social values. To take but one example, the House report on the legislation noted that the Committee on House Administration's Subcommittee on Elections had considered mandating same-day voter registration, which would have substantially increased the number of eligible voters registered, but ultimately rejected the idea because of many perceived administrative problems, including the "procedures for verification." H.R. Rep. 103-9, at 4 (1993).

*Bellitto*, 935 F.3d at 1201. The "denial confers standing" rule from *Public Citizen* and *Akins* controls for this, asking only whether the plaintiff was denied access to Congressionally mandated public records.

Restoration News, like most press outlets, generally publishes solely to shed light on important stories. But like most media, its stories sometimes implicitly suggest policy change. Its standing to sue for access denials should not hinge on its stories' perceived support for Congress's substantive goals, so that seemingly neutral newsgathering and reporting, or reporting that seems to take issue with Congressional policy, is unprotected.

The panel decision suggests that neutral reporting does not advance Congress's interest under the NVRA. *PILF*, 136 F.4th at 467-68. But using NVRA records to report on a shortage of polling places and advocating for a fix might.[1] A

---

[1] *See, e.g.*, Derek Willis, *Freed from Federal Oversight, Southern States Slash Number of Polling Places*, ProPublica (Nov. 4, 2016), https://www.propublica.org/article/freed-from-federal-oversight-southern-states-slash-number-of-polling-places (citing study stating "[t]he primary source for the

10

journalist attempting to rebut that story would *not* have standing, given that any contrary reporting would ostensibly undermine the activist reporting and, by extension, the Congressional interest advanced by it.

### b. Judicial inquiry into a journalist's intent and viewpoint offends the freedom of the press.

Letting courts decide whether the media is advancing Congressional policy courts great danger. Content and viewpoint-based tests are inherently suspect under the First Amendment. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.,* 576 U.S. 155, 163 (2015). Some content-based restrictions "are more subtle, defining regulated speech by its function or purpose." *Id.* at 163-64. "[A] regulation of speech cannot escape classification as facially content based simply by swapping an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result." *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 74 (2022). But that is precisely what the nexus test does.

If Congress tried to directly craft a private right of action limiting standing to only those that agreed with it, the courts would quickly find a First Amendment violation. A judicially crafted rule of standing should be rejected just as quickly.

---

vast majority of the 2016 general election data are lists of polling places provided by state election officials via public records requests.").

## CONCLUSION

PILF's petition for rehearing en banc should be granted.

Dated: June 6, 2025

/s/*Edward D. Greim*
Edward D. Greim*
Matthew R. Mueller*
**Admitted to Third Circuit Bar*
Graves Garrett Greim LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
T. 816.256.3181
F. 816.256.5958
*Counsel for Amicus Restoration News*

12

## CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPEVOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

In accordance with Local Appellate Rules 28.3(d) and 46.1(e), I certify both attorneys whose names appear on the brief are members of the bar of this court.

In accordance with Local Appellate Rule 31.1(c), I certify that ESET Endpoint Security scanned the file and did not detect a virus and that any paper copies that Amicus submits will be identical to the text of the electronic brief.

In accordance with Federal Rule of Appellate Procedure 32(g)(1), I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because it contains 2,592 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), according to the word count of Microsoft Word. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in Times New Roman 14-point font, a proportionally spaced typeface.

Dated: June 6, 2025

/s/Edward D. Greim
Edward D. Greim

*Counsel for Amicus Restoration News*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2025, a copy of the foregoing Brief of Restoration News as Amicus Curiae in Support of Appellee/Cross-Appellant's Motion for Rehearing was filed electronically through the appellate CM/ECF system with the Clerk of the United States Court of Appeals for the Third Circuit. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: June 6, 2025　　　　　　　　　　　　　*/s/Edward D. Greim*
　　　　　　　　　　　　　　　　　　　　　　Edward D. Greim

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Amicus Restoration News*